IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD WILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07 CV 3395 |
| ) | |
| CIVIL CONTRACTORS & ENGINEERS ) | |
| INC. and MUKESH JHAVERI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Donald Willer brings this action against Civil Contractors & Engineers, Inc. ("CCE") and Mukesh Jhaveri under the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), the Illinois Securities Law of 1953, Illinois common law, and the Employee Retirement Income Security Act of 1974 ("ERISA"). CCE and Jhaveri have moved to dismiss Willer's complaint for failure to state a claim.

For the following reasons, the Court dismisses Counts 1, 2, and 3, with leave to amend Count 2, but denies defendants' motion without prejudice as to Counts 4 through 14.

## FACTS

In his complaint, Willer alleges that in May 1989, Jhaveri asked him to join in starting a construction company. That month, Jhaveri incorporated CCE. At the same time, he entered into an oral preorganization subscription agreement with Willer. The agreement, which was later reduced to writing, allowed Willer to acquire up to 24.5 percent of the stock of CCE.

1

Willer began working for CCE as a vice-president in June 1989 and exercised his subscription right on December 31, 1995, acquiring 24.5 percent of CCE's common stock for $307. Jhaveri retained ownership of the remaining 75.5 percent of CCE's common stock.

On or about November 12, 1999, Willer and Jhaveri entered into a Buy-Sell Agreement ("Agreement") containing a put option that allowed Willer to sell his stock back to CCE. The Agreement provided that an independent appraiser acceptable to Willer and Jhaveri would set the price by determining the fair market value of CCE as a going concern. If the parties could not agree on an appraiser, the Agreement provided that each party would then name his own appraiser. If the lower appraised value was at least 90 percent of the higher figure, the figures would be averaged. Otherwise, the two appraisers would appoint a third appraiser to make a final appraisal.

The parties ultimately did not use the procedure detailed in the Agreement to determine the value of Willer's put option, instead negotiating a price of $310,000 without employing an independent appraiser. During negotiations, Willer alleges, Jhaveri successfully dissuaded him from contacting an independent appraiser or reviewing any of CCE's books and records. Willer also asserts that Jhaveri concealed material corporate documents and financial statements from him and failed to state material facts about the value of CCE.

On February 20, 2005, Willer sent Jhaveri a letter stating that he wished to exercise his put option under the installment terms set out in the Agreement. The letter directed that CCE pay $10,000 either to the Health and Welfare Insurance Benefits/Laborers International Pension and Welfare Fund or to Willer in cash by July 1, 2005; $150,000 to Willer by April 1, 2005; and $150,000 to Willer by July 1, 2005. Willer claims that he has not received the full consideration

to which the parties agreed. He also contends that the actual value of CCE at the time he exercised his put option was at least $5.3 million and that his 24.5 percent interest was therefore worth at least $1,298,500, rather than $310,000.

Several of Willer's claims also concern CCE's pension and profit sharing plans. Willer became a participant in the pension plan at the time of its inception on January 1, 1990. Although it is unclear when CCE formed the profit sharing plan, Willer participated in that plan, too. Jhaveri and CCE later merged the pension plan into the profit sharing plan, effective December 1, 2002. At that time, defendants amended the profit sharing plan to provide that no additional benefits would accrue after November 15, 2002.

Willer claims that he did not receive any information from defendants about his interest in the merged plan after October 20, 2004. On that date, Willer's wife received a fax stating the value of Willer's interests in the two earlier plans as of December 31, 2002. The fax listed the value of Willer's pension plan account on that date as $106,600.97 and the value of his profit sharing plan account as $140,150.52. Willer states that he made unsuccessful attempts after that time to find out from defendants the status of the merged profit sharing plan, the value of his interest in it, the nature of the merged plan's investment portfolio, and his own return on investment.

Willer alleges that defendants' conduct with respect to the Buy-Sell Agreement and the exercise of his put option violated the Securities Act, the Exchange Act, and the Illinois Securities Law. Willer also alleges that defendants breached the Buy-Sell Agreement and the put option contract. He further claims that defendants breached the indemnification provision in the Agreement and that they committed fraud in inducing him to enter into the Agreement and to

3

exercise the put option. Willer additionally claims that CCE is liable for all of Jhaveri's conduct under the doctrine of respondeat superior. Willer's last common law claim is that Jhaveri, as the majority shareholder of CCE, breached his fiduciary duty to Willer, the minority shareholder. Finally, Willer claims that Jhaveri and CCE breached their fiduciary duties under ERISA.

Defendants CCE and Jhaveri contend that Willer's federal securities claims should be dismissed for failure to state a claim, that his state and common law claims should then be dismissed for lack of jurisdiction following the dismissal of the federal claims, and that his ERISA claims should be either dismissed as moot with leave to reinstate or held in abeyance. For the reasons stated below, the Court grants defendants' motion in part and denies it in part.

## DISCUSSION

When ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a judge "must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). With regard to most of Willer's claims, he "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*per curiam*) (quoting *Bell Atlantic*, 127 S.Ct. at 1964). Some of Willer's claims are subject to the particularized pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b). The Court will address these requirements where relevant.

### 1. Securities Act § 12(2) Claim

Jhaveri and CCE contend that Willer has not stated a claim under section 12(2) of the Securities Act, 15 U.S.C. 77*l*(a)(2), which imposes liability based upon misstatements contained

4

in a prospectus, because the Buy-Sell Agreement is not a prospectus within the meaning of the Securities Act.  Section 2(10) of the Securities Act defines a prospectus as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television," that offers for sale or confirms the sale of any security.  15 U.S.C. § 77b(10).  Section 10 of the Securities Act, 15 U.S.C. § 77j(a), details the information that a prospectus must contain, concluding that a "prospectus" is a document that must generally "include the 'information contained in the registration statement'" that a company must file with the SEC prior to an initial public offering.  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).  Because only a public offering requires the preparation and filing of a registration statement—which includes, among other things, certified financial statements and information about the management of a company—the Supreme Court held in *Gustafson* that the term prospectus "refers to a document soliciting the public to acquire securities."  *Id.* at 574.  There is nothing in Willer's complaint indicating that the Agreement or the put option contract between him and CCE and Jhaveri was executed in connection with a public offering of stock.  Neither document, therefore, is a prospectus within the meaning of section 12(2).

Willer asks the Court to revisit *Gustafson* and expand the definition of "prospectus" to include documents such as the Agreement in this case.  This Court, however, "lack[s] authority to determine whether adherence to a judgment of [the Supreme Court] is inequitable" and "must 'follow the [Supreme Court] case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.'"  *Agostini v. Felton*, 521 U.S. 203, 258–59 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

Because neither the Agreement nor the put option qualifies as a prospectus under existing

5

law, Count 1 fails to state a claim upon which relief may be granted.

## 2. Exchange Act Section 10(b) and Rule 10b-5 Claim

Defendants claim that Willer has failed to meet the pleading requirements of section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and SEC Rule 10b-5, 15 C.F.R. § 240.10b-5. To state a claim for a violation of Rule 10b-5, a plaintiff must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) which proximately caused the plaintiff's injuries. *See*, *e.g.*, *Moss v. Healthcare Compare Corp.*, 75 F.3d 276, 280 (7th Cir. 1996). Because a 10b-5 claim is premised upon fraud, Federal Rule of Civil Procedure 9(b) also applies and requires that the plaintiff plead with particularity the circumstances constituting fraud. *See, e.g., DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story."). In a case involving alleged fraudulent misrepresentations, "the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

In addition, under the pleading requirements of the PSLRA, the complaint must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). When, as in this case, the plaintiff's claim depends on proof that the defendant acted with scienter, the PSLRA further requires that the complaint "state

6

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2). The required state of mind is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l*, 495 F.3d 753, 756 (7th Cir. 1997).

The Supreme Court recently resolved the earlier split among the various Circuits over what the PSLRA means by a "strong inference" that the defendant acted with the required state of mind. *See Tellabs v. Makor Issue & Rights*, *Ltd.*, 127 S. Ct. 2499 (2007). A court determining whether a complaint sufficiently alleges scienter must consider competing inferences and may let the complaint stand only if it finds that an inference of scienter is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2505.

The Court begins its analysis with the text of the statute and regulation at issue. Section 10(b) of the Exchange Act prohibits, "in connection with the purchase or sale of any security," the use of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). SEC Rule 10b-5 makes it unlawful for any person

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

7

17 C.F.R. § 240.10b-5.

Willer alleges that Jhaveri and CCE violated section 10(b) and Rule 10b-5 in several respects in connection with the Buy-Sell Agreement and Willer's exercise of the put option. First, he alleges that Jhaveri entered into the Buy-Sell Agreement with no intention of honoring its terms, to induce Willer to remain at CCE. Second, he alleges that Jhaveri dissuaded him from reviewing CCE's books and records, including its financial statements, tax returns and contracts. Third, he alleges that Jhaveri dissuaded him from retaining an independent appraiser to value CCE. Willer contends that these actions constitute omissions of fact that were material to Willer's decision whether to exercise the put option.

There are at least two critical problems with Willer's Exchange Act claim. First, though the thrust of his claim seems to be that defendants undervalued his share of CCE, he does not squarely allege that they misrepresented the company's value or the value of his minority interest, not to mention the circumstances of any such misrepresentation as required by Rule 9(b). Second, though Willer alleges that defendants concealed information about CCE from him, he does not allege what information they concealed or why any allegedly concealed information rendered misleading any particular statements defendants made. In addition, Willer has not done a particularly good job in attempting to comply with the PSLRA's requirements concerning allegations of scienter.

For these reasons, Count 2, as currently alleged, fails to state a claim. The Court dismisses Count 2, with leave to amend.

**3.     Exchange Act Section 20(a) Claim**

In Count 3, Willer asserts a claim against Jhaveri, as a "control person" of CCE, under section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Section 20(a) provides for joint and several liability of any person who "controls" any other person liable under the Exchange Act. Counts 1 and 2, however, both fail to state a claim upon which relief may be granted. Section 20(a) provides a cause of action only for derivative claims, and because Willer has not adequately alleged an underlying violation of federal securities law by CCE, Willer's "control person" claim against Jhaveri necessarily fails.

For this reason, the Court dismisses Count 3 for failure to state a claim.

**4. ERISA Claims**

In Counts 7 and 8 of his complaint, Willer claims that CCE and Jhaveri were fiduciaries, within the meaning of ERISA, of CCE's profit sharing and pension plans. He alleges that defendants breached their fiduciary duties by failing to disclose information that he needed as a plan participant to exercise his rights and interests under the plans. He also alleges, on information and belief, that investment in the plans was not properly diversified and carried an inherently high degree of risk. Willer claims that he was damaged as a result of defendants' actions.

In their motion, CCE and Jhaveri concede that Willer is entitled to certain funds and state that they are willing to engage in discussions with Willer's attorney about transferring these funds. They argue that Willer's ERISA claims should be dismissed as moot or held in abeyance during any such negotiations. This is not a basis for dismissal of a claim. The Court therefore declines to dismiss Counts 7 and 8.

**5.     State Law Claims**

Jhaveri and CCE argue if the Court dismisses Willer's federal claims, it should dismiss his state law claims (Counts 4–6 and 9–14) for lack of supplemental jurisdiction. Because the Court has not dismissed all of Willer's federal claims, and because it has given Willer leave to amend another of his federal claims, the Court denies this request without prejudice

**CONCLUSION**

For the foregoing reasons, the Court grants defendants' motion to dismiss in part and denies it in part [docket no. 11]. Counts 1, 2, and 3 are dismissed for failure to state a claim. Willer is granted leave to amend Count 2 on or before November 13, 2007. Defendants' motion is otherwise denied. The case is set for a status hearing on November 20, 2007 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
Date: October 30, 2007                                                         United States District Judge